# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 13-70 |
| | ) Judge Nora Barry Fischer |
| MICHAEL EUGENE GORNY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is Defendant Michael Eugene Gorny's Motion to Suppress evidence challenging two search and seizure warrants issued by a local magistrate judge authorizing the search and seizure of evidence from two cell phones found in his possession upon his arrest on July 4, 2012, (Docket No. 41) and the Government's opposition thereto, (Docket No. 44). Gorny's Motion has been fully briefed and the Court accepted documentary evidence[1] and heard oral argument from counsel at a hearing on May 22, 2014.[2] (Docket Nos. 41, 44, 45, 46, 48, 50). Upon consideration of the parties' arguments, the evidence of record and the official transcript of the motion hearing, and for the following reasons, Gorny's Motion [41] is DENIED.

### II. BACKGROUND

Gorny is charged at Count One with one count of felon in possession of firearms (i.e., a Glock .40 caliber pistol and a Lorcin, 9mm caliber pistol) in violation of 18 U.S.C. § 922(g)(1), on or about July 4, 2012. (Docket No. 1). The Indictment alleges that Gorny's possession of said

---

[1] Gorny introduced three exhibits into evidence at the hearing, without objection from the Government: Def. Ex. A - "Application for Search Warrant and Authorization," dated July 11, 2012, which was previously filed at Docket Number 41-1; Def. Ex. B - "City of Pittsburgh Bureau of Police Supplemental Report"; and Def. Ex. C - "Affidavit of Probable Cause," with a Complaint/Incident Number of 12115502. (Docket No. 48).

[2] The Court also heard oral argument as to Gorny's "Motion to Produce Evidence Which the Government Intends to Use Under Federal Rules of Evidence 404(b) and 609," (Docket Nos. 40, 45), and the Government's opposition to same, (Docket No. 44, 46). The Court will issue a separate written order addressing such Motion.

1

firearms was unlawful because of his prior state convictions, including: aggravated assault; carrying a firearm without a license; and possessing firearms in furtherance of an aggravated assault. (*Id.*).

As is noted below, on July 4, 2012, City of Pittsburgh Narcotics Detectives were conducting surveillance near Gorny's home as part of an investigation into his alleged heroin trafficking activities, stemming from his purported sale of heroin to undercover detectives on June 19, 2012. (Def. Ex. B, C). Gorny was arrested by the detectives on that date and the firearms charged in the Indictment were located by the detectives in bushes outside of a residence adjacent to Gorny's home. (*Id.*).

A week after the arrest, on July 11, 2012, Pittsburgh Police sought and obtained search warrants for a black LG phone and a red Samsung phone which were found on Gorny's person when he was arrested on July 4, 2012. (Docket Nos. 41-1 at 2-3; 44-1 at 1-6). Both warrants seek authorization to search the cell phones for the purpose of investigating alleged violations of: 35 P.S. § 780-113(a)(16), possession of controlled substances; 35 P.S. § 780-113(a)(30), possession with intent to deliver controlled substances; 18 Pa.C.S. § 6105, unlawful possession of a firearm; 18 Pa.C.S. § 3925, receiving stolen property; and, 18 Pa.C.S. § 5104, resisting arrest. (*Id.*). The warrants request authorization to search and seize "information stored within the body of the phone to include, but not limited to, the telephone number, direct connect number, carrier IP number, voice mail contents, incoming and outgoing text and picture messages, phonebook contents or contact list, incoming and outgoing call information, as well as any photos or videos." (Docket Nos. 41-1 at 2-3; 44-1 at 1-6). The affidavits in support aver the following:

> Your affiants are members of the Pittsburgh Bureau of
> Police currently assigned as detectives in the Narcotics Unit.

Affiant Ladner has been a police officer for the City of Pittsburgh since January of 2005. Affiant Ladner was assigned to the Narcotics Unit in 2009. Affiant Mercurio has been a police officer since April of 1988. Affiant Mercurio has been assigned to the Narcotics Unit since 2005. Other duties included being assigned to a gang and drug suppression detail for five years. Affiant Gorham has been a police officer for the City of Pittsburgh since April of 1979. Affiant Gorham has been assigned to the Narcotics Unit since 1988. Other duties included being assigned as a plain clothes officer for two years. Affiant Novakowski has been a police officer for the City of Pittsburgh since February of 1993. Other duties included being assigned to a gang and drug suppression detail for two years. Affiant Novakowski has been assigned to the Narcotics Unit since 1998. Your affiants have been involved in hundreds of drug arrests with a combined law enforcement experience of over eighty years. Your affiants have been involved in over one hundred undercover purchases of illegal narcotics with your affiants purchasing drugs hand to hand from drug dealers. Your affiants have also been involved in or supervised hundreds of controlled purchases of illegal narcotics. Your affiants have obtained search warrants for illegal narcotics. When serving the search warrants, your affiants have seized illegal narcotics, drug paraphernalia and firearms. Your affiants have worked with numerous confidential informants who have assisted your affiants in narcotics investigations. Your affiants have had the opportunity to interview hundreds of individuals involved in selling and using illegal narcotics. In addition to standard state mandated police training, your affiants have received additional training in narcotics including DEA Narcotics Investigation Course as well as other courses related to narcotics investigations. Your affiants have worked jointly in narcotics investigations with other agencies including the FBI, DEA, State Attorney General's Office, Allegheny County Police Narcotics, U.S. Postal Inspector's Office, Pennsylvania State Police and the Allegheny County District Attorney's Narcotics Enforcement Team.

Through training and experience, your affiants have learned that cell phones are commonly used in the trafficking of illegal narcotics. Your affiants know that it is very common for individuals involved with drug dealing to possess and use cell phones to buy and sell illegal narcotics. Your affiants have encountered and interviewed numerous individuals involved in all aspects of trafficking of illegal narcotics. Your affiants have learned that almost all of these individuals use cell phones as part of their involvement in illegal activity related to drug trafficking, During undercover operations, your affiants have used cell phones

to buy illegal narcotics from dealers. Your affiants know that drug buyers and drug dealers alike store the phone numbers of other individuals involved in drug trafficking in their phones. Your affiants know that drug buyers and drug dealers use text messaging to arrange transactions. Your affiants have seen incidents where individuals involved with illegal narcotics have taken cell phone photographs and videos of illegal narcotics. Your affiants know that a cell phone is often a needed tool for individuals involved with buying and selling illegal narcotics.

On Tuesday 06-19-12, affiants Novakowski and Mercurio were working in an undercover capacity in the area of Cherry Court in the City of Pittsburgh. Novakowski and Mercurio came into contact with Michael Eugene Gorny (DOB: 12-06-88, SID 28864787). Gorny sold Novakowski and Mercurio thirteen stamped bags of heroin in exchange for one hundred dollars. Gorny also supplied Novakowski and Mercurio with a phone number (412-628-0855) to contact him for future buys of heroin.

Novakowsi conducted a field test of the sample of heroin purchased from Gorny. The sample tested positive for the presence of heroin. The heroin was sent to the Allegheny County Crime Lab for further analysis. (Laboratory Case # 12LAB05853)

In the days after the undercover meeting, Mercurio and Ladner placed calls and sent text messages to 412-628-0855. The nature of the phone contact was concerning buying heroin. A second transaction did not happen.

Also, in the days after the undercover meeting, your affiants participated in the arrests of numerous individuals involved in selling illegal narcotics. These indivivals (sic) may have been associates of Gorny. Your affiants believe that Gorny may have become aware that Novakowski and Mercurio were undercover officers.

On Wednesday 07-04-12, Ladner and Novakowski arrested Gorny for the delivery of heroin that occurred on Tuesday 06-19-12. Gorny was observed in possession of two stolen handguns, (Lorcin 9mm semiautomatic … and Glock model 22 40 caliber semiautomatic handgun …). Gorny was also in possession of two cell phones. (black and red Samsung Sprint phone and a black LG Verizon phone)

In addition to charging Gorny with the delivery on 06-19-12, your affiants also charged Gorny with possessing the stolen

> handguns. Gorny is a person not to possess a firearm. A copy of the reports concerning the undercover buy and arrest are attached to this affidavit. (CCR # 115502-12) These reports number twelve pages.
>
> The two cell phones possessed by Gorny were seized by your affiants. They are currently being held as evidence in the Pittsburgh Police Property Room.
>
> Your affiants are requesting a daytime search warrant for the contents of both cell phones. Your affiants respectfully request a search warrant to gain access into each of the phones listed above. Your affiants wish to search the contents of the phones for evidence related to the delivery of heroin … that occurred on 06-19-12. Your affiants also wish to examine the phones to see if they contain information concerning Gorny's involvement in other trafficking of illegal narcotics, other criminal activities and the possession of the two stolen firearms.

(Docket Nos. 41-1 at 2-3; 44-1 at 1-6).

The magistrate judge was also provided with police reports of the June 19, 2012 and July 4, 2012 incidents along with the affidavits and warrants. (Def. Exs. B, C). The police reports provide a generally consistent account of the two incidents with the information provided in the affidavit quoted above. (*Id.*). Relevant here, the reports also state that "In July 2012, we learned that the phone number Gorny supplied to us was turned off. We felt that Gorny may have become aware of the fact that Mercurio and Novakowski were undercover officers." (*Id.*). The supplemental report also includes contact information for the arrestee, Gorny, including two telephone numbers, one of which was the number he had earlier supplied to the undercover detectives on June 19, 2012. (Def. Ex. B).

III. DISCUSSION

*A. Fourth Amendment Challenge*

Gorny contends that the cell phones which were on his person at the time of his arrest were searched in violation of the Fourth Amendment, which provides that:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.

Here, search and seizure warrants were obtained from a local magistrate judge authorizing the search of both cell phones and the seizure of any evidence obtained therefrom related to Gorny's drug trafficking activities and his possession of stolen firearms. (Docket Nos. 41-1 at 2-3; 44-1 at 1-6). "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). A trial court exercises "only a deferential review of the *initial* probable cause determination made by the magistrate." *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993) (citing *Gates*, 462 U.S. at 236) (emphasis in original). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for … conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). The deference given to a magistrate's issuance of a warrant "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions." *United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011). Still, "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993).

A magistrate's role in issuing a warrant is to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. A warrant is to be upheld on review "as long as there is a substantial basis for a fair

probability that evidence will be found." *Conley*, 4 F.3d at 1205. In conducting this assessment, a reviewing court is confined "to the facts that were before the magistrate judge, i.e., the affidavit, and [the court may] not consider information from other portions of the record." *Jones*, 994 F.2d at 1055. Stated otherwise, the District Court is restricted to viewing only the information confined by the "four corners" of the affidavit before the magistrate. *United States v. Whitner*, 219 F.3d 289, 295-96 (3d Cir. 2000). "The supporting affidavit to a search warrant is to be read in its entirety and in a common sense, nontechnical manner." *Miknevich*, 638 F.3d at 182. This includes "all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." *Gates*, 462 U.S. at 238-39. Further, "probable cause is a fluid concept that turns on the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules." *Miknevich*, 638 F.3d at 182 (internal quotations omitted) (quoting *United States v. Shields*, 458 F.3d 269, 277 (3d Cir. 2006)). Proof beyond a reasonable doubt is not required. *Id*.

Gorny presents a series of arguments challenging the warrants in this case. (Docket Nos. 41, 45). He argues that the warrants and incorporated affidavits did not provide a sufficient nexus that evidence of criminal activity would be found on the phones, i.e., the foundation for the probable cause determination was not based on sufficient facts and relied too heavily on purported expert opinion-type submission of the detectives, that the information contained in the affidavit was "stale" and that the warrants constituted impermissible overbroad general warrants given their scope. (Docket Nos. 41, 45). The Government succinctly responds that the affidavits plainly set forth sufficient facts from which the local magistrate judge could make a proper probable cause determination. (Docket Nos. 42, 46). In this Court's estimation, the Government's position is more persuasive.

7

On balance, after examining the totality of the information provided in the warrants and affidavits, the Court finds that the information provided by the experienced narcotics detectives, reviewed in a straightforward and non-technical manner, is more than sufficient to demonstrate probable cause that evidence of criminal activity by Gorny, i.e., drug trafficking and/or his possession of stolen firearms, would be found during a search of the two cell phones. *See Gates*, 462 U.S. at 238-39.

While Gorny asserts that the information presented by the detectives as to drug sellers and buyers conducting drug transactions via cell phones is "expert-type testimony," the specific evidence cited by the detectives of his own drug activities and use of cell phones in furtherance thereof is more than sufficient to find that there was a substantial probability that evidence of his engaging in criminal activity would be found on the phones he had on his person on July 4, 2012. Such information was formed on the basis of the detectives' undercover purchase of narcotics (13 stamp bags of heroin) from Gorny on June 19, 2012. (Docket Nos. 41-1 at 2-3; 44-1 at 1-6). The officers averred that during the deal, Gorny provided them with a cell phone number to use if they wished to purchase additional heroin from him. (*Id.*). They attempted to call and text Gorny at the provided number several times but Gorny never responded. (*Id.*). The detectives acknowledged that they had executed arrests of several individuals for drug trafficking with whom Gorny may have been associated around this time and later determined that the phone number that was provided by Gorny had been shut off. (*Id.*; *see also* Def. Exs. B, C).

The detectives then executed an arrest of Gorny outside a residence two weeks later on July 4, 2012. (Docket Nos. 41-1 at 2-3; 44-1 at 1-6). Upon his apprehension, Gorny was observed carrying two firearms which were recovered by law enforcement from a bush and he had two cell phones on his person. (*Id.*). In light of all of this information, the officers had a

sufficient nexus to believe that Gorny himself had used the cell phones which were found on his person in furtherance of drug activities which the detectives directly observed him engage in two weeks earlier. *See Miknevich*, 638 F.3d at 182. He also had told them that he was going to continue engaging in heroin trafficking and provided the detectives with a phone number where he could be reached to set up additional deals. (Docket Nos. 41-1 at 2-3; 44-1 at 1-6). They then observed Gorny with two firearms which were determined to be stolen. *(Id.)*. Thus, "there [was] a fair probability that contraband or evidence of" Gorny's drug trafficking activities and/or possession of stolen firearms would be found on the two cell phones. *Gates*, 462 U.S. at 238.

The alleged "expert-type testimony" provided by the detectives in the affidavits merely helps to inform this analysis and it is plainly appropriate for the issuing magistrate judge to consider and rely on the significant experience of the affiants in investigating violations of narcotics offenses, making undercover buys and the use of cell phones by sellers and buyers in the drug trade. (Docket Nos. 41-1 at 2-3; 44-1 at 1-6). It is likewise necessary for this Court to recognize and consider these facts when reviewing the underlying probable cause determination. To this end, the Third Circuit and Supreme Court of the United States have cautioned reviewing courts, such as this one, from "overly compartmentalizing the determination of probable cause." *United States v. Yusuf*, 461 F.3d 374, 390 (3d Cir. 2006) (citations omitted). This directive requires the Court to "consider the cumulative weight of the information set forth by the investigating officer in connection with reasonable inferences that the officer is permitted to make based upon the officer's specialized training and experiences." *Id.* (citing *United States v. Arvizu*, 534 U.S. 266, 275 (2002)).

Gorny's contention that the facts set forth in the affidavit that: the detectives did not initiate the undercover buy via a phone call to Gorny but apparently approached him on the

street; they unsuccessfully attempted to call and text the telephone number which was provided by Gorny during the undercover buy between June 19 and July 4; they learned that the phone was shut off; and, that Gorny may have become aware that other individuals were arrested for narcotics trafficking, should counsel against a finding of probable cause in this case again ignores the relevant standard. (Docket No. 41). In this regard, Gorny essentially proposes that the only inference which could possibly be drawn from such facts was that he no longer possessed the cell phone associated with the phone number he had provided to the detectives and had stopped all of his drug activities. (*Id.*). Specifically, he argues that:

> Moreover, although not acknowledged in the affidavit, the disposable nature of cell phones would clearly add to their appeal to drug dealers, and would simultaneous[ly] make it less likely that a dealer who learned that he was the target of a police investigation would have the same cell phone two weeks after realizing he had provided the number to police and his phone was therefore compromised. Accordingly, the "expert" opinion that drug dealers use cell phones adds nothing in the specific context of this case, in which the officers allege that in the intervening two weeks prior to the phones being seized, the officers were unable to reach Mr. Gorny at the telephone number he provided and Mr. Gorny "may" have realized, due to the arrest of his associates, that he provided the number to police.

(Docket No. 41 at 8-9).

Cell phones and firearms are generally considered the "tools of the trade" of drug traffickers, which the involved detectives fully understood and conveyed to the magistrate judge. *See e.g., United States v. Dean*, 59 F.3d 1479, 1490 (5th Cir. 1995) ("We have observed repeatedly that firearms are the tools of the trade of those involved in illegal drug activity."); *United States v. Jones*, Cr. No. 07-258, 2009 WL 1855832, at *4 (E.D. Pa. Jun. 26, 2009) (quotation and citations omitted) ("Cell phones are considered essential tools of the drug trade."). But, the basis for the detectives' probable cause to search the cell phones seized from Gorny

arises from the fact that they knew that Gorny himself used cell phones as a tool of his own drug trafficking rather than the suggested empty assertions about drug traffickers generally. (Docket Nos. 41-1 at 2-3; 44-1 at 1-6). After they observed Gorny with two firearms when they sought to execute the arrest warrant, and later learned that the firearms were stolen, the detectives formed the reasonable belief that a search of the cell phones may result in finding evidence of how Gorny obtained the stolen firearms because, again, they knew that he used his cell phone for other illegal activities, i.e., to facilitate his sales of narcotics. (*Id.*).

In short, accepting Gorny's arguments on these issues would basically require a finding of direct evidence by the detectives that they knew that he had drug evidence on his phones. But, the same is simply not required. *See United States v. Pearson*, 181 F. App'x 192, 195 (3d Cir. 2006) (citing *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002)) ("Direct evidence of a crime is not required for the issuance of a search warrant."); *see also Aguilar v. Texas*, 378 U.S. 108, 114 (1964) (an affidavit "need not reflect the direct personal observations of the affiant."). A warrant is sufficient so long as the "veracity" and "basis of knowledge" of the persons providing the information is sufficient to "provide a fair probability, under the totality of the circumstances, that evidence of criminal activity will be discovered in a certain place." *Pearson*, 181 F. App'x at 195.

Gorny further argues that the information contained in the affidavit about his use of a cell phone to conduct drug deals was "stale," which he believes undermines the probable cause finding. (Docket No. 41). The Government posits that the information was not outdated and sufficiently recent to permit reasonable action by the detectives. (Docket Nos. 44, 46). The Court of Appeals has held that:

> Age of the information supporting a warrant application is a factor
> in determining probable cause. If too old, the information is stale,

11

> and probable cause may no longer exist. Age alone, however, does not determine staleness ... Rather, we must also examine the nature of the crime and the type of evidence.

*United States v. Zimmerman*, 277 F.3d 426, 434 (3d Cir. 2002) (internal citations omitted). Our court of appeals has not adopted "bright line rules" delineating a length of time to determine staleness. *Id.* at 435. But, all of the cases cited by Gorny discussing staleness involve time periods much greater than two weeks. *See e.g, Zimmerman*, 277 F.3d at 434 (10 months or so between the allegation and the warrant was stale); *United States v. Weber*, 923 F.2d 1338, 1340 (9th Cir. 1990) (twenty months made information stale). Additionally, courts have recognized that continued criminal activity in the intervening period undermines a claim of staleness. For example, in *United States v. Raheem Brown*, this Court rejected an argument that information about a "controlled buy" which occurred eight months prior to the issuance of the warrant was stale because the additional facts set forth in the affidavit established that Brown was engaged in a course of conduct of drug trafficking during the eight months in question. *United States v. Brown*, Crim. No. 12-272, Docket No. 43 at 10-11 (W.D. Pa. Jan. 2, 2014); *see also United States v. Harris*, 2013 WL 1828549 (W.D. Pa. Apr. 30, 2013) (citing *United States v. Costa*, 736 F. Supp. 2d 859, 863 (D. Del Sept. 7, 2010)) (concluding that a search warrant affidavit was not stale and contained proper nexus with the defendant's residence where a seven month gap existed between the occurrence of the information contained in the affidavit and the presentation of the affidavit to the magistrate judge).

Applying these principles to the instant matter, the Court finds that the information in the affidavit is not stale because a period of two weeks is insufficient to demonstrate staleness and the supposed staleness of the information is but one of the factors which the Court must consider in the totality of the circumstances when reviewing the warrants. Moreover, the period of time at

issue here is not a full two weeks because Gorny told the undercover detectives that he was going to continue dealing heroin beyond the June 19, 2012 transaction and thus admitted that he was engaging in an illegal course of conduct. *See Brown*, Crim. No. 12-272, Docket No. 43 at 10-11.

Gorny last contends that the warrants are impermissibly overbroad because they authorized the search and seizure of virtually all of the evidence which could be recovered from the cell phones. (Docket Nos. 41, 45). The Government believes that the warrants were appropriately tailored and that the scope of the search was fully supported by probable cause. (Docket Nos. 44, 46).

"An overly broad warrant describes in both specific and inclusive generic terms what is to be seized, but authorizes the seizure of items as to which there is no probable cause." *United States v. Karrer*, 460 F. App'x 157, 162 (3d Cir. 2012) (internal quotations omitted). "Probable cause exists where the totality of the circumstances suggests 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Karrer*, 460 F. App'x at 162 (quoting *Gates*, 462 U.S. at 238).

Here, the challenged warrants authorized the search of "information stored within the body of the phone to include, but not limited to, the telephone number, direct connect number, carrier IP number, voice mail contents, incoming and outgoing text and picture messages, phonebook contents or contact list, incoming and outgoing call information, as well as any photos or videos." (Docket Nos. 41-1 at 2-3; 44-1 at 1-6). In this Court's opinion, the warrants were not overbroad and suppression is not appropriate under this theory. Again, the detectives were aware that Gorny used cell phones to conduct drug deals and through their considerable experience investigating narcotics traffickers, the detectives understood the areas of cell phones

13

where evidence of drug trafficking likely would be found, which included the areas set forth in the warrants for the two cell phones in this case. (*Id.*). Specifically, the detectives averred that:

> Your affiants know that drug buyers and drug dealers alike store the phone numbers of other individuals involved in drug trafficking in their phones. Your affiants know that drug buyers and drug dealers use text messaging to arrange transactions. Your affiants have seen incidents where individuals involved with illegal narcotics have taken cell phone photographs and videos of illegal narcotics. Your affiants know that a cell phone is often a needed tool for individuals involved with buying and selling illegal narcotics.

(Docket Nos. 41-1 at 2-3; 44-1 at 1-6). Accordingly, the Court finds that the scope of the warrants was not overbroad.

For these reasons, Gorny's Motion to Suppress is denied.

B. *Good Faith Exception*

The Government has also advanced the alternative theory that the "good faith exception" should save the evidence from exclusion at trial, in the event that a Fourth Amendment violation is found by the Court. (Docket Nos. 44, 46). Gorny suggests that the "good faith exception" should not apply because the warrants were not founded on probable cause. (Docket Nos. 41, 45). The Court once again agrees with the Government's position and alternatively holds that if the warrants were deemed unconstitutional, the Government has proven that the inevitable discovery doctrine would otherwise save the evidence from exclusion at trial.

The Supreme Court has held that evidence derived from a warrant not supported by probable cause is still admissible when obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate judge. *United States v. Leon*, 468 U.S. 897, 926 (1984). "[T]he purpose of the exclusionary rule—to deter police misconduct— would not be furthered by suppressing evidence obtained during a search 'when an officer acting

14

with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.' " *United States v. Tracey*, 597 F.3d 140, 150 (3d Cir. 2010) (quoting *Leon*, 468 U.S. at 919–20).

The question is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922. Indeed, "[t]he mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." *Hodge*, 246 F.3d at 307–308 (citing *Leon*, 468 U.S. at 922). The United States Court of Appeals for the Third Circuit has recognized that the good faith exception does not apply in four limited circumstances:

> 1) where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
>
> 2) where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;
>
> 3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
>
> 4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Tracey*, 597 F.3d at 151 (citations omitted). These limited exceptions "involve conduct that is 'deliberate, reckless, or grossly negligent.'" *Id*. (quoting *Herring v. United States*, 55 U.S. 135 (2009)).

Here, Gorny essentially relies on the third prong of this test and challenges the underlying probable cause determination. (Docket Nos. 41, 45). He has not even alleged that any of the other prongs are applicable.[3] *See Brown*, Docket No. 43 at 14-15. Given the Court's findings set

---

[3] Indeed, Gorny's counsel affirmatively conceded that "I wouldn't go so far as to say it's deliberately false or recklessly disregards, but the affidavit sort of says, well, we attempted to call Mr. Gorny at the phone number he provided but the second transaction did not happen." (Docket No. 50 at 16).

forth above, the warrants set forth sufficient indicia of criminal activity permitting the search and seizure of the cell phones to uphold the magistrate judge's probable cause determination. *See* § III.A., *supra*. In addition, aside from the police reports – which were provided to the magistrate judge as attachments to the warrants and incorporated therein – Gorny has not introduced any evidence in an effort to undermine the reliability of the information in the warrants. (Def. Exs. A, B, C). Given same, the Court finds that none of the necessary factors are present which would preclude the Government's invocation of the good faith exception. Accordingly, Gorny's Motion to Suppress must be denied on this alternative basis as well.

IV. CONCLUSION

Based on the foregoing, Gorny's Motion to Suppress [41] is DENIED. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Date: June 23, 2014

cc/ecf: All counsel of record