# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 13-70 |
| | ) | Judge Nora Barry Fischer |
| MICHAEL EUGENE GORNY, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM ORDER**

I. INTRODUCTION

This criminal case is scheduled to commence jury selection and trial on September 2, 2014. Defendant Michael Eugene Gorny ("Gorny") is charged at Count One with one count of being a felon in possession of firearms (i.e., a Glock .40 caliber pistol and a Lorcin, 9mm caliber pistol) in violation of 18 U.S.C. § 922(g)(1), on or about July 4, 2012. (Docket No. 1). The parties have stipulated to Gorny's status as a prior convicted felon and that his right to lawfully possess a firearm was not restored as of that date. (Docket No. 70). The parties have also agreed that several detectives of the City of Pittsburgh Bureau of Police were present at Gorny's residence on July 4, 2012 to arrest him but dispute whether Gorny possessed the firearms in question, and a number of other evidentiary and legal matters, which are discussed herein.

Presently before the Court are three motions in limine filed by the parties which have been fully briefed, (Docket Nos. 73, 76, 77, 79, 80), and argued by their counsel at the Final Pretrial Conference held on August 21, 2014, (Docket No. 81), as well as disputes as to the admissibility of certain exhibits at trial, (G1:G9; Def. A:M), and regarding the final jury instructions, (Docket No. 68), which were likewise argued at the Final Pretrial Conference. As these matters are ripe for disposition, the Court makes the following pretrial rulings.

1

II. *Government's Motion in Limine for the Admission of Rule 404(b) Evidence*
(Docket No. 73)

Initially, the Court denies the Government's Motion in Limine to the extent that it seeks to admit evidence pursuant to Rule 404(b) of the Federal Rules of Criminal Procedure that law enforcement officers were present at Gorny's home to arrest him as a result of a "two week investigation," (Docket No. 73), over Gorny's objection to same, (Docket No. 80). In light of the United States Court of Appeals for the Third Circuit's recent directives in *United States v. Caldwell*, --- F. 3d ---, 2014 WL 3674684 (3d Cir. 2014), it is obvious to this Court that the Government has failed to meet its burden to demonstrate an appropriate evidentiary link between the proffered bad act (i.e., the "two week investigation") and the charge in this case of Gorny's unlawful possession of a firearm on July 4, 2012 given his uncontested prior felony status. Indeed, the purpose of law enforcement's investigation of Gorny was for his illegal distribution of heroin two weeks prior to the date in question (and possibly in the future)[1] and the Government has conceded that the underlying facts of Gorny's heroin distribution are not admissible under Rule 404(b). (*See* Docket No. 73). Hence, there is minimal relevance, if any, between the purported "two week investigation" of Gorny's activities in late June 2012 and his alleged possession of the firearms on July 4, 2012. *See* FED. R. EVID. 401. The only relevant fact is that the officers were present at Gorny's residence on that date to arrest him, and Gorny has conceded that such background information is admissible at trial, along with an appropriate limiting instruction. (Docket No. 80).

Further, even if the proffered evidence of the officers' "two week investigation" of Gorny was deemed relevant, and admissible under Rule 404(b), which it is not, the Court would exclude it under Rule 403 because its "probative value is substantially outweighed by a danger of …

---

[1] These issues were also the subject of the motion to suppress evidence in this case, which the Court denied in a Memorandum Opinion dated June 23, 2014. (Docket No. 51).

unfair prejudice, confusing the issues, [and potentially] misleading the jury." FED. R. EVID. 403. Here, the unspecified nature of the "two week investigation" would likely mislead the jury to believe that the officers spent two weeks investigating Gorny for possessing firearms, which is factually incorrect and/or to contemplate the precise nature of such a lengthy investigation. The admission of such evidence would likewise confuse the straightforward issues in this case of whether the officers observed Gorny in possession of the firearms on the date in question. Therefore, unfair prejudice would inure to Gorny if the challenged evidence was admitted and must be excluded after conducting an appropriate balancing under Rule 403. *See Caldwell*, 2014 WL 3674684. Accordingly, the Government's Motion in Limine is DENIED to the extent that it seeks to admit witness testimony that officers conducted a "two week investigation" of Gorny. Government counsel shall advise its witnesses of such ruling.

With respect to the Government's Motion in Limine seeking the admission of Gorny's possession of synthetic marijuana which was discovered by the officers upon his arrest (Docket No. 73) and his opposition to same (Docket No. 80), such motion is DENIED, without prejudice, as the Government has proffered that it will only seek to introduce such facts into the trial in the event that Gorny testifies and states that he was not involved in any illegal activity on the date in question. As such, the Court will reserve ruling on any contest to the proffered evidence until the time and place of trial and only if Gorny testifies in a manner which would prompt the Government's desire to introduce such evidence.

   III.   *Defendant's Motion in Limine to Exclude Testimony Concerning Operability of Firearms* (Docket No. 76).

The Court next denies Defendant's Motion in Limine to Exclude Testimony Concerning Operability of Firearms (Docket No. 76) given the Government's opposition thereto (Docket No. 79), and the parties' arguments at the Final Pretrial Conference. To this end, the Court agrees

3

with Gorny's position that the prevailing caselaw in this area generally holds that evidence of operability of the firearms is not *per se* necessary for the Government to meet its burden of proof at trial to establish that the two items recovered on July 4, 2012 are indeed firearms within the statutory definition under 18 U.S.C. § 921(a)(3). Such definition is broad in scope and includes: "(A) any weapon which will or is designed to or may readily be converted to expel a projectile by the action of an explosive, (B) the frame or receiver of any such weapon, (C) any firearm muffler or firearm silencer, or (D) any destructive device." 18 U.S.C. § 921(a)(3).

However, Gorny, through his counsel, has refused to stipulate that the items are firearms and reserved the right to cross-examine the Government's witnesses, (i.e., William Best of the Office of the Medical Examiner of Allegheny Count, Forensic Laboratory Division and Special Agent Andrew Hromyak of the ATF), on these points. (Docket No. 81). Hence, without such stipulation, the Government must present evidence at trial to establish that the statutory requirements under section 921(a)(3) have been met and it has chosen to do so through the proffered testimony of Mr. Best, who the Government expects will testify at trial consistent with his proffered report that he tested the two items in question and was able to shoot bullets through them. *See* 18 U.S.C. § 921(a)(3)(A); *see also United States v. Brown*, Crim. No. 12-224, 2014 WL 183077, at *3-4 (W.D. Pa. Jan. 14, 2014) (McVerry, J.). Further, to the extent that Gorny contends that the evidence from Mr. Best is cumulative to any testimony of Special Agent Hromyak, (*see* Docket No. 80), Government counsel explained that Special Agent Hromyak has been out of the area on a detail for some time and has not personally tested the items to determine if they are firearms. Thus, it is presently unclear if the testimony from these proffered witnesses will indeed become cumulative and any such evaluation will have to be reserved until the time and place of trial.

Finally, the Court concurs with the recent decision of Judge McVerry in *United States v. Brown*, wherein he held that the probative value of the evidence of the firearms' operability does not substantially outweigh the opposing factors under Rule 403 of the Federal Rules of Evidence. *See Brown*, 2014 WL 183077, at *3-4 ("the fact that the firearm was operable will not necessarily inflame the passions of the jury. Accepting that argument would be tantamount to saying that any time the Government attempts to prove its case by showing that the 'weapon will ... expel a projectile,' the Government's evidence would be unfairly prejudicial."). Accordingly, the Court denies Defendant's Motion, without prejudice. However, the Court strongly suggests that the parties meet and confer in an effort to reach stipulations to resolve this dispute, akin to the stipulation reached in the matter of *United States v. Haddix*, Criminal No. 12-75 at Docket No. 112.

IV. *Defendant's Motion in Limine to Exclude Testimony Based on Witness Speculation* (Docket No. 77)

The Court also grants Defendant's Motion in Limine to Exclude Testimony Based on Witness Speculation, (Docket No. 77), and therefore overrules the Government's objections thereto, (Docket No. 79) and its proffer of lay opinion testimony of law enforcement witnesses that Gorny was engaged in a "ruse" or the like when he purportedly shouted that he had sweat in his eyes after being escorted by the officers to the rear of a law enforcement vehicle. Rule 701 of the Federal Rules of Evidence provides that "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understand the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scop of Rule 702." FED. R. EVID. 701. However, the United States Court of Appeals for the Third Circuit has recognized that "[a] lay witness may not offer an opinion of the defendant's

5

subjective state of mind where the jury is equally capable of making such an inference." *United States v. Chaffo*, 452 F. App'x 154, 159 (3d Cir. 2011) (citing *United States v. Anderskow*, 88 F.3d 245, 250-51 (3d Cir. 1996)). Further,

> [W]hen a witness has fully described what a defendant was in a position to observe, what the defendant was told, and what the defendant said or did, the witness's opinion as to the defendant's knowledge will often not be "helpful" within the meaning of Rule 701 because the jury will be in as good a position as the witness to draw the inference as to whether or not the defendant knew.

Anderskow, 88 F.3d at 250 (quoting *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992)).

Here, the Government generally proffers that its witnesses will testify that they: observed Gorny drop a bag covered with a shirt in the bushes located in an adjacent property; approached him and announced their presence at which time he attempted to flee on foot; apprehended Gorny and placed him in the back of a law enforcement vehicle in front of his property; and that Gorny started yelling that he had sweat (or something else) in his eyes. (*See* Docket Nos. 79; 81). The proffered lay opinion testimony follows that the officers believe that Gorny yelled in order to create a "ruse" or distract them from walking over to the bushes to investigate what Gorny had dropped there. (*Id.*). Ultimately, the officers were not dissuaded from conducting their investigation, walked over to the bushes and located the firearms within the plastic bags and under the shirt. (*Id.*).

In this Court's estimation, "the jury is equally capable of making" the inference proffered by the Government that Gorny only yelled in order to create a ruse and did not actually have sweat in his eyes. Consistent with the Rules of Evidence, the officers are free to describe the circumstances of their respective interactions with Gorny and their observance of his behavior, but the proffered lay opinions as to why he acted as he did is not helpful to the jurors' understanding of the case because they are equally capable of making the challenged inference.

6

In addition, the inference proffered by the Government is not the only logical inference that can be drawn from the instant factual circumstances. As the defense argued at the Final Pretrial Conference, it is just as likely that Gorny may have actually had sweat in his eyes given that he had just attempted to flee police in late morning (around 11:00 a.m.) on a summer day, i.e., July 4, 2012. Hence, any inference to be drawn from such circumstantial evidence will be left to the jury to decide.

Accordingly, Defendant's Motion in Limine (Docket No. 77) is granted. Counsel for the Government shall advise all government witnesses of this ruling.

V. *Parties Dispute as to Actual versus Constructive Possession Jury Instructions*

In a related dispute, the parties contest the appropriate language to be used in the final charge to the jury in this case. (Docket No. 68). The parties agree that the Court should charge the jury using Model Third Circuit Jury Instruction § 6.18.922G-4 but contest whether the "constructive possession" language should be included in the charge or not, with the Government arguing that such charge is appropriate and the defense countering that this is a pure actual possession case. (*Id.*). The Government's proffered theory presented at the Final Pretrial Conference, continuing with the facts set forth in § IV above, was that Gorny maintained constructive possession of the firearms at the time that he was apprehended by the officers and was located in the rear of the law enforcement vehicle. The Government posits that Gorny's alleged "ruse" was a fruitless attempt to regain control of the firearms which he had previously thrown or dropped into the bush on the adjacent property.

At the outset, the Court recalls that the Government largely conceded that this case is an "actual possession" case in the context of oral argument at a pretrial motion hearing on May 22, 2014. (*See* Docket No. 50 ("Ms. King: In this case, as the Defendant pointed out, the officers

7

here saw Mr. Gorny throwing a bag into the bushes. While it is an actual possession of firearms …")). As such, the Court could hold the Government to its previously stated position. In any event, the Court finds that the Government's proffer of evidence in support of its constructive possession theory falls short of convincing this Court that this is a constructive possession case.

It is well settled that "[t]he government can prove possession of a firearm for purposes of § 922(g)(l) in two ways: (1) by showing that the defendant exercised direct physical control over the weapon (actual possession), or (2) by showing that he exercised dominion or control over the area in which the weapon was found (constructive possession)." *Caldwell*, 2014 WL 3674684, at *8. Here, the facts of the case are remarkably similar to the facts of *United States v. Somerville*, Crim. No. 09-341, Docket No. 48, (W.D. Pa. Jun. 11, 2010), wherein Judge Ambrose determined that the case involved only actual and not constructive possession. In *Somerville*, the Court recounted the proffer as follows:

> The Government's witnesses will testify that they observed Defendant grab his waistband, flee on foot, and, during his fljght, drop a magazine onto the ground. The Government will also have witnesses testify as to the discovery the next day of a firearm, without a magazine, on a property adjoining the property where the magazine was dropped.
>
> If a jury believes the Government's witnesses, the Government will have established by circumstantial evidence, Defendant's actual possession of the firearm.
>
> However, even if the jury did not accept the Government's evidence, the Government could not present evidence of Defendant's constructive possession of the firearm (the evidence sought to be excluded here) as there is absolutely no evidence that Defendant had any connection with the property where the firearm was found that could support the dominion or control necessary to support a theory of constructive possession. Otherwise, a jury would be left to consider constructive possession where police were chasing a fleeing man whom they observed dropping a magazine and a gun without a magazine found in the yard of a house to which Defendant had no connection.

8

*Somerville*, Docket No. 09-341 at 1-2. The facts of this case are also distinguishable from those presented by the Government. In particular, the case of *United States v. Brown*, Crim. No. 12-224, 2014 WL 292185 (W.D. Pa. Jan. 27, 2014), is different for a number of reasons. First, Brown agreed to proposed jury instructions filed with the Court which advised the jury of the law on actual and constructive possession. *See Brown*, 2014 WL 292185 at n.2. Second, the facts of Brown's case demonstrated that it was possible for him to have both actually possessed and constructively possessed the firearms in question because he was observed in physical possession of the firearm (actual possession) and then apparently stuffed the firearm between couch cushions under the couch where he was sitting (constructive possession). *Id.* at 3-4. Judge McVerry's thoughtful discussion of the types of cases where a dual-charge is appropriate is also instructive to this Court's decision that this is a simple actual possession case.

Beyond these decisions, the Government's position is factually unsupported because there is no evidence that Gorny was able to exercise dominion or control over the area where the firearms were eventually discovered, that is, the bush located on the adjoining property. Again, based on the proffer, Gorny was detained by law enforcement officers in the vehicle at the time. At most, he yelled in an attempt to distract the officers so that he could escape from this custodial situation and the officers believed he would try to access the firearms located in the bushes. But Gorny's "ruse" was unsuccessful. Importantly, the Government also concedes that it has no evidence that Gorny exercised dominion or control over the bushes on the adjacent property as it admits that the premises was abandoned and that Gorny discarded the items into the bushes. *See United States v. Harrison*, 689 F.3d 301, 307 (3d Cir.2012) ("In most cases, disclaiming ownership or physically relinquishing the property is sufficient to establish

9

abandonment."). For these reasons, the Government has failed to establish that the charge on constructive possession is warranted.

      *VI.    Defendant's Objection to Interstate Nexus Jury Instruction*

Defendant further objects to the Court's inclusion of the Third Circuit's Model Jury Instruction on the interstate nexus element, § 6.18.922G-5, arguing that such instruction is unconstitutional under the Supreme Court's decision in *United States v. Lopez*, 514 U.S. 549 (1995), absent a showing that the firearm traveled in interstate commerce at a point close in time to the alleged possession. (Docket Nos. 68, 81). The Government counters that the Model Jury Instruction in question is settled law in the Third Circuit and that Gorny's objection should be overruled.

The Court agrees with the Government's position. To this end, the United States Court of Appeals for the Third Circuit has recognized that for purposes of sustaining a conviction under 18 U.S.C. § 922(g)(1), proof "that the gun had traveled in interstate commerce, at some time in the past, [is] sufficient to satisfy the interstate commerce element." *United States v. Singletary*, 268 F.3d 196, 205 (3d Cir. 2001). And, the Court of Appeals has subsequently recognized that such constitutional arguments often raised by defendants are "foreclosed" by the decision in *Singletary*. *See United States v. Benjamin*, 711 F.3d 371, 381 (3d Cir. 2013) ("Benjamin argues that 18 U.S.C. § 922(g)(1) is unconstitutional on its face and as applied to him under the Commerce Clause in order to preserve the issue for Supreme Court review. He correctly recognizes that his constitutional arguments are foreclosed by our precedent in *United States v. Singletary*, 268 F.3d 196 (3d Cir. 2001)"). As the Court pointed out during the Final Pretrial Conference, Gorny has stipulated to the admission into evidence of certain exhibits which are pictures of the firearms in question and are clearly marked that components of same

were manufactured outside of Pennsylvania, (e.g., J-1c, "Austria" and J-1f, "Georgia"). Further, Gorny indicated that he had no evidence to counter the Government's proffer that no components of the firearms in question are or were ever manufactured within the Commonwealth of Pennsylvania.

In light of such authority and uncontested facts, the Court will charge the jury on the interstate nexus element consistent with Model Jury Instruction § 6.18.922G-5. The Court further orders that the parties meet and confer in an effort to reach a stipulation on this issue.

   *VII.* *Parties' Cross-Objections to Exhibits, Namely Photographs of Scene*

The final disputes between the parties before the Court surround their cross-objections to photographic exhibits of the scene outside of Gorny's residence. The proffered photographs from the parties depict widely different views of the scene, with the Government's proffered photos showing neatly cut grass in the area between where law enforcement officers were conducting surveillance and the position where Gorny allegedly possessed the firearms in his front yard and then dropped them in the bushes in the adjacent lot. *Compare* G-6 *with* Def. I. In contrast, Gorny's proffered photographs show unkempt grass that appears to be two or three feet high and would cause some obstruction to an observer from the same vantage point. *Id.*

The parties have raised the same objections to their opponent's exhibits, i.e., lack of authentication, misleading depiction of the scene; and relevance. As the Court advised at the Final Pretrial Conference, it was initially inclined to overrule the objections in the event that the parties were able to lay an appropriate foundation for the admission of the photographs at trial. On further review, and after hearing the parties' positions during oral argument, the Court will sustain Gorny's objections to the Government's exhibits based on a failure of the Government to demonstrate to the Court through its proffer that it can authenticate its photographic exhibits of

the scene and will overrule the Government's objections to Gorny's photographic exhibits, provided that Gorny's witness can properly authenticate such photographs consistent with his counsel's proffer at the Final Pretrial Conference.

Evidentiary rulings are committed to the sound discretion of the trial court. Pursuant to Rule 901 of the Federal Rules of Evidence, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." FED. R. EVID. 901(a). The "burden of proof for authentication is slight. All that is required is a foundation from which the fact-finder could legitimately infer that the evidence is what the proponent claims it to be." *United States v. Mebrtatu*, 543 F. App'x 137, 140 (3d Cir. 2013) (citing *United States v. Reilly*, 33 F.3d at 1425). But, "[i]f the situation and surrounding circumstances of the taking of the picture are subject to change, the photograph must have been taken at the time of the occurrence in question or before the situation and circumstances have undergone substantial change." *See also* 2 Federal Trial Handbook: Criminal § 54:2 (4th ed. 2013). The Court of Appeals has explained that:

> [T]here need be only a prima facie showing, to the court, of authenticity, not a full argument on admissibility. Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court. The only requirement is that there has been substantial evidence from which they could infer that the document was authentic.

*Id.* (citation and quotation omitted).

In this Court's opinion, Gorny has made a prima facie showing of authenticity through his proffer of Ms. Wilshere's potential testimony that she took the 13 photographs (Def. Ex. A:M) in July of 2012. *Id.* However, the Court cannot conclude that the Government has met its burden to make a prima facie showing that the photographs are an authentic depiction of the

scene on the date in question based on its counsel's proffer. According to its counsel, the photographs were downloaded from Google Street View by an unknown individual on an unknown date. Critically, it has not been established *when* the photographs were taken. To this end, some but not all of the photographs proffered by the Government are marked with a date in the lower left hand corner, i.e., April 2012, October 2012 and November 2012. (*See* G-6 & G-7 "April 2012"; G-3 "November 2012"; G-4 & G-5 "October 2012").[2] Government counsel posits that such markings mean that the photographs were taken on the dates listed. But, no witness has been proffered by the Government to substantiate counsel's understanding of the date stamp on these photos or to confirm the accuracy of same. Further, no other evidence of any kind has been presented to the Court to fill in this evidentiary gap of the dates that the photographs were taken. At most, Government counsel advised that she intends to have law enforcement witnesses authenticate such documents at trial by testifying that the photographs contain a fair and accurate representation of the area in question on the date of their arrest of Gorny. (Docket No. 81). Even during her proffer, Government counsel was not clear on what her witnesses would testify to—at one point stating that they would testify that the lawn area in question was "freshly mowed" but after being challenged with Gorny's version of the photographs, which his witness personally took in July of 2012, counsel qualified her proffer that "I don't know if they will specifically say it was freshly mowed, they will say it was short to the ground." It thus remains unclear as to what the officers will state in regard to these photographs. Hence, the Court finds the foundation for same to be lacking.

Finally, to the extent that the Court determined that the Government had met its burden under Rule 901, the Court would exclude the proffered exhibits under Rule 403 of the Federal Rules of Evidence. While it is undisputed that the 7 photographs proffered by the Government

---

[2]  G-1 and G-2 are not marked at all with a date stamp.

show the general area of the scene in question, if the Court were to accept the dates proffered on the photographs as true and accurate (which it has not), all of the marked exhibits depict the area in question in the spring and or fall. In contrast, the events in question took place on July 4, 2012 in the summer. It is common knowledge that landscapes and foliage in this area undergo considerable changes as the seasons turn from spring to summer to fall and the Government's photographs were purportedly taken at times during the year when the foliage was not in full bloom, (i.e., early spring and fall). As such, the probative value of the Government's photographs is low and the Government admits that the photographs are an important piece of evidence because the parties here dispute whether the officers actually observed Gorny possess the firearms from their positions across the street at some distance away. With this background, the probative value of the Government's exhibits is substantially outweighed by the potential to mislead the jury and confuse the issues, even with effective cross-examination. *See United States v. Garvin*, 88 F. App'x 542 (3d Cir. 2004). Such evidence is also cumulative to the 13 photographic exhibits proffered by the defense, which are able to be authenticated sufficiently by the photographer who took such photos much closer in time to the events in question. *See* FED. R. EVID. 403.

*VIII. Conclusion*

For these reasons, the Court makes the following rulings:

1. The Government's Motion in Limine for the Admission of Rule 404(b) Evidence (Docket No. 73) is DENIED as to the proffered Rule 404(b) evidence and DENIED, without prejudice as to the possession of synthetic marijuana to be revisited in the event Defendant testifies;

2. Defendant's Motion in Limine to Exclude Testimony Concerning Operability of Firearms (Docket No. 76) is DENIED and the parties are directed to meet and confer in an effort to reach stipulations on these issues;

3. Defendant's Motion in Limine to Exclude Testimony Based on Witness Speculation (Docket No. 77) is GRANTED and the Government's witnesses shall be instructed by counsel that they are not to offer any opinions as to whether Gorny engaged in a "ruse" to distract them;

4. The Court sustains Defendant's objection to the Government's proffer of a constructive possession instruction and will instruct the jury as to actual possession, only, (see Docket No. 68);

5. The Court overrules Defendant's Objection to Interstate Nexus Jury Instruction and will charge the jury with the charge proffered by the Government (*See* Docket No. 68);

6. Defendant's Objections to Government Exhibits 1 through 7 are sustained as the Government has failed to proffer a sufficient foundation for the authenticity of such exhibits; and, the Government's objections to Defense Exhibits A through M are overruled.

IT IS SO ORDERED.

*s/Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Dated: August 27, 2014

cc/ecf: All counsel of record.